<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| MARK PICOZZI et al., | : | |
| | : | |
| Plaintiffs, | : | Civil No. 12-4102 (NLH) |
| | : | |
| v. | : | |
| | : | |
| JUDGE KYRAN CONNOR et al., | : | **O P I N I O N** |
| | : | |
| Defendants. | : | |

---

**Hillman**, District Judge:

This matter comes before the Court upon submission of a civil complaint ("Complaint"), <u>see</u> Docket Entry No. 1, which arrived unaccompanied by the filing fee or by any application to proceed <u>in forma pauperis</u> ("IFP").  <u>See</u> Docket Entry No. 1-1. The Complaint named, as Plaintiffs in his matter, seven individuals: (1) Mark Picozzi ("Picozzi"); (2) Shane Crouch ("Crouch"); (3) Cinque Smith ("Smith"); (4) Daryl Ashley ("Ashley"); (5) Benjamin Thomas ("Thomas"); (6) Jamil Hunter ("Hunter"); and (7) Michael Salsano ("Salsano").  <u>See</u> Docket Entry No. 1, at 1.  However, the Complaint was signed only by Picozzi, <u>see</u> <u>id</u>, at 10, and the allegations stated in the Complaint seem to focus solely on Picozzi (asserting claims against the state judge presiding over Picozzi's criminal prosecution, the prosecutors representing the State in that criminal proceeding, Picozzi's public defender and the office

employing that public defender).  See, generally, Docket Entry
No. 1.  Notably, while the Complaint at bar strives to present a
pleading on behalf of a putative class, the claims asserted in
the Complaint are virtually indistinguishable from those asserted
in Picozzi v. Connor, Civil Action No. 12-3063 (NLH), which was
administratively terminated for Picozzi's failure to duly apply
for IFP status, and where the Court allowed Picozzi to cure that
deficiency by either filing a proper IFP application or prepaying
his filing fee.  See Picozzi v. Connor, Civil Action No. 12-3063,
Docket Entry No. 3.[1]  The Complaint suggests Plaintiffs' interest
to proceed as co-plaintiffs and as class representatives of the
putative class asserted in the Complaint.  See Instant Matter,
Docket Entry No. 1, at 1.

     For the reasons stated below, Plaintiffs' application for
joinder or to proceed as a class will be denied.  Picozzi's
instant claims will be administratively terminated as duplicative
of those asserted in Picozzi v. Connor, Civil Action No. 12-3063
(NLH).  However, out of an abundance of caution and in order to
preserve the timeliness of Crouch, Smith, Ashley, Thomas, Hunter
and Salsano's claims, if such exist and were intended, the Court
will direct the Clerk to open separate matters for these six

---

     [1]  Indeed, in Picozzi v. Connor, Civil Action No. 12-3063
(NLH), Picozzi submitted a motion conceding that his challenges
in Picozzi v. Connor, Civil Action No. 12-3063 (NLH), are
identical to those raised in this matter.  See Picozzi v. Connor,
Civil Action No. 12-3063, Docket Entry No. 4.

individuals and allow them an opportunity to state their own
claims and apply for IFP status.

**I.   APPLICATIOS FOR IFP STATUS**

### A.   General Considerations

The Clerk will not file a civil rights complaint unless the
person seeking relief pays the entire applicable filing fee in
advance or the person applies for and is granted <u>in forma
pauperis</u>, status pursuant to 28 U.S.C. § 1915.  <u>See</u> Local Civil
R. 5.1(f).  The filing fee for a civil rights complaint is
$350.00.  <u>See</u> 28 U.S.C. § 1914(a).  If a prisoner seeks
permission to file a civil rights complaint <u>in forma pauperis</u>,
the Prison Litigation Reform Act ("PLRA") requires the prisoner
to file a complete application.  <u>See</u> 28 U.S.C. § 1915(a)(2).
Specifically, under Section 1915, a prisoner seeking to bring a
civil action <u>in forma pauperis</u> must submit an affidavit,
including a statement of all assets, which states that the
prisoner is unable to pay the fee.  <u>See</u> 28 U.S.C. § 1915(a)(1).
The prisoner also must submit a certified copy of his inmate
trust fund account statement for the six-month period immediately
preceding the filing of his complaint.  <u>See</u> 28 U.S.C.
§ 1915(a)(2).  The prisoner must obtain this certified statement
from the appropriate official of each prison at which he was or
is confined.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Tyson v. Youth Ventures, L.L.C.</u>,

42 Fed. App'x 221 (10th Cir. 2002); Johnson v. United States, 79 Fed. Cl. 769 (2007).

The PLRA further provides that, if the prisoner is granted permission to file the complaint in forma pauperis, then the Court is required to assess the $350.00 filing fee against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct installment payments from the prisoner's prison account equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00.  See 28 U.S.C. § 1915(b).  In addition, if the prisoner is granted permission to proceed in forma pauperis, then the PLRA requires this Court to screen the complaint for dismissal and to dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an defendant who is immune from such relief.

The PLRA also provides that, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants (that is, incurred three "strikes"), then the prisoner may not bring another action in forma pauperis unless he is in imminent danger of serious physical injury.  See 28 U.S.C. § 1915(g).

Here, all Plaintiffs are, allegedly, prisoners.  None of the Plaintiffs submitted an IFP application, and no filing fee was prepaid.  Since the Complaint does not indicate that either Picozzi or any other members of the asserted class are in imminent danger of serious physical injury, grant of emergent IFP status is not warranted as to any Plaintiff.

Consequently, even if the Court were to construe the Complaint as individually submitted by each Plaintiff, the Court would not be able to order filing of the Complaint as to any Plaintiff since, with regard to each of them, in forma pauperis status would be denied.[2]  It follows that the Court cannot grant IFP status to Plaintiffs collectively, either as joined co-plaintiffs or as a class.

**B.    Collection of Filing Fee and the "Strike" Aspect**

There are two ways to construe the Complaint: (a) as an attempted class action; and (b) as an action sought to be brought by Plaintiffs jointly.  The Court of Appeals for the Third Circuit has not expressly addressed the issue of the collection of a filing fee in a class action brought by prisoners, but the Court of Appeals provided district courts with detailed guidance as to this issue within the context of joinder of plaintiffs.

---

[2]  Such denial, obviously, would be without prejudice to timely curing the deficiencies of their IFP applications.

Specifically, in Hagan v. Rogers, 570 F.3d 146 (3d Cir. 2009), the Court held that in forma pauperis prisoners are not categorically barred from joining as plaintiffs under Rule 20 of the Federal Rules of Civil Procedure.  However, where the entire $350 filing fee has not been prepaid, the full $350 filing fee must be assessed against each in forma pauperis prisoner co-plaintiff who is permitted to join, i.e., the filing fee should be assessed as though each such prisoner were proceeding individually.  See Hagan, 570 F.3d at 150.  Accordingly, if all Plaintiffs submit complete IFP applications and this matter proceeds past sua sponte dismissal as a joint action, each Plaintiff would be assessed a full $350 filing fee,[3] and a dismissal of this action as frivolous, malicious, for failure to state a claim or for asserting a claim against an entity immune from § 1983 suit would be counted as a "strike" against each Plaintiff.[4]

Recognizing that Plaintiffs, being pro se litigants, might be unaware of the above-discussed filing fee requirements (and being mindful of the possibility that all Plaintiffs other than

---

[3]  In other words, since there are twelve Plaintiffs, the total fee assesses would be twelve times $350, that is, $4,200.

[4]  While the Court of Appeals has not directly addressed the issue of assessing filing fees in a purported class action brought by prisoners, this Court has no reason to presume that the outcome would be different from the joinder scenario addressed in Hagan.  However, since we deny class certification in this matter, we need not address this issue.

Picozzi might not even know about Picozzi's submission of the
Complaint at bar since the complaint is only signed by Picozzi),
the Court finds it warranted to allow each Plaintiff an
opportunity to make an informed personal decision as to whether
(and how) each Plaintiff wishes to raise his claims.

## II.   CLASS ACTION AND JOINDER

However, even if the issues of the proper filing fee, the
insufficiency of Plaintiffs' incomplete IFP applications and the
risk of "strike" were not considerations in this matter, the
Court could neither certify Plaintiffs' "class" nor allow
Plaintiffs to proceed as co-plaintiffs at this time.  The reasons
for such a determination are numerous, and each warrants denial
of joinder or class certification.

### A.   Class Certification is Not Warranted

A party seeking class certification bears the burden of
proving that the proposed class action satisfies the requirements
of Federal Rule of Civil Procedure 23.  See Johnston v. HBO Film
Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001).  To meet this
burden, Plaintiffs must satisfy the four prerequisites of Rule
23(a) and show that the action can be maintained under at least
one of the subsections of Rule 23(b).  See id.; see also Amchem
Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997).  The Court
of Appeals has recognized the utility, and often the necessity,
of looking beyond the pleadings at the class certification state

of litigation.  See Newton v. Merrill Lynch, Pierce, Fenner &

Smith, Inc., 259 F.3d 154, 168-69 (2001) ("In reviewing a motion

for class certification, a preliminary inquiry into the merits is

sometimes necessary to determine whether the alleged claims can

be properly resolved as a class action").[5]

     To be certified as a class, plaintiffs must satisfy Federal

Rule of Civil Procedure 23(a).  Rule 23(a) provides as follows:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all only if (1) the
> class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact
> common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or
> defenses of the class, and (4) the representative
> parties will fairly and adequately protect the
> interests of the class.

     Commonly referred to as numerosity, commonality, typicality,

and adequate representation, these four requirements are "meant

to assure both that class action treatment is necessary and

efficient and that it is fair to the absentees under the

particular circumstances."  Baby Neal v. Casey, 43 F.3d 48, 55

(3d Cir. 1994).  Both size of class and complexity of litigation

should be limited to encourage manageability of class suits.

Rule 23(c)(4) permits division of any action into subclasses so

as to increase manageability.  See Dore v. Kleppe, 522 F.2d 1369,

---

[5]  Despite that review, "it is not necessary for the
plaintiffs to establish the merits of their case at the class
certification stage" and "the substantive allegations of the
complaint must be taken as true."  Chiang v. Veneman, 385 F.3d
256, 262 (3d Cir. 2004).

8

reh'g denied, 526 F.2d 697 (5th Cir. 1975).  Rule 23(c)(4)

provides that, if "a class [is] divided into subclasses[,] . . .

each subclass [is] treated as a class."  Therefore, "[a]ny

subclass formed must itself meet all requirements of class

action," Avery v. Heckler, 584 F. Supp. 312 (D. Mass. 1984); see

also De Gidio v. Perpich, 612 F. Supp. 1383 (D. Minn. 1985), and

even if subclassification is appropriate, subclasses cannot be

certified unless the party seeking certification can demonstrate

that requirements of FRCP 23 are established.  See Pickett v.

IBP, Inc., 197 F.R.D. 510 (M.D. Ala. 2000).

　　　Numerosity is the first prerequisite listed in Rule 23(a).

"Numerosity requires a finding that the putative class is so

numerous that joinder of all members is impracticable."  Newton,

259 F.3d at 182; Fed. R. Civ. P. 23(a)(1).  "No single magic

number exists satisfying the numerosity requirement."  Moskowitz,

v. Lopp, 128 F.R.D. 624, 628 (E.D. Pa. 1989).  The Court of

Appeals, however, generally has approved classes of forty or

more, reserving lower number of litigants for joinder actions.

See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).  In

the case at bar, Plaintiff's putative class of 7 people facially

fails to satisfy the numerosity requirement.

　　　The next Rule 23(a) prerequisite is commonality.  To satisfy

the commonality requirement, Plaintiffs must show the existence

of at least one question of law or fact common to the class.  See

Johnston v. HBO Film Mgint., 265 F.3d 178, 184 (3d Cir. 2001).

"Commonality does not require an identity of claims or facts

among class members; instead, the commonality requirement will be

satisfied if the named plaintiffs share at least one common

question of fact or law with the grievances of the prospective

class."  Id. (quoting In re the Prudential Ins. Co. of Am. Sales

Practices Litig., 148 F.3d 283, 310 (3d Cir. 1998) (internal

quotations omitted)).  "All that is required is that the

litigation involve some common questions and that plaintiffs

allege harm under the same legal theory."  Baby Neal, 43 F.3d at

58.  "Because the requirement may be satisfied by a single common

issue, it is easily met . . . ."  Baby Neal, 43 F.3d at 56.  It

is not necessary that all putative class members share identical

claims.  See Hassine v. Jeffes, 846 F.2d 169, 176-177 (3d Cir.

1988).  "Even where individual facts and circumstances do become

important to the resolution, class treatment is not precluded."

Baby Neal, 43 F.3d at 57.  Here, however, the Complaint focuses

on the circumstances of Picozzi and provides virtually no factual

substance or detail with regard to other Plaintiffs.  On the

basis of such a pleading, the Court cannot find that the

commonality requirement – as lenient as it is – could be met in

the case at bar.

     Rule 23(a)(3) provides that the typicality requirement is

satisfied if the "claims or defenses of the representative

parties are typical of the claims or defenses of the class."
Fed. R. Civ. P. 23(a)(3).  The typicality requirement is designed
to align the interests of the class and the class representatives
so that the latter will work for the benefit of the entire class
through the pursuit of their own goals.  See In re Prudential
Ins. Company of America, 148 F.3d 283, 311 (3d Cir. 1998).  The
typicality test is also not overly demanding.  See O'Keefe v.
Mercedes-Benz USA, LLC, 214 F.R.D. 266, 289 (E.D. Pa. 2003).  The
typicality requirement may be met despite the existence of
factual differences between the claims of the named plaintiffs
and the claims of the proposed class.  See Eisenberg, 766 F.2d at
786.  If "the class representatives . . . present those common
issues of law and fact that justify class treatment, thereby
tending to assure that the absent class members will be
adequately represented," then Rule 23(a)(3) is satisfied.
Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 923 (3d
Cir. 1992) (quoting Eisenberg, 766 F.2d at 786).  "Factual
differences will not render a claim atypical if the claim arises
from the same event or practice or course of conduct that gives
rise to the class of the class members, and if it is based upon
the same legal theory." Id. at 923.  However, in the case at
bar, the typicality of claims and defenses does not appear to be
present with respect to the putative class since – if Picozzi's
claims could be viewed as indicative of the claims of other

Plaintiffs – the claims of each Plaintiff uniquely turn on the performance and actions of that Plaintiff's prosecutor and public defender, and the particular criminal charges brought against each Plaintiff.   Therefore, this Court finds that this prerequisite is not satisfied by Plaintiffs' pleadings.  See Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir 2006) (noting that "class certification [is defeated upon showing of] some degree of likelihood [that] a unique defense will play a significant role at trial").

Rule 23 also requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  However, where the class includes members with divergent interests over time the representatives may not adequately represent the class.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 449 (3d Cir. 1977); Miller v. Hygrade Food Prods. Corp., 198 F.R.D. 638 (E.D. Pa. 2001); see also Wetzel v. Liberty Mut., Ins. Co., 508 F.2d 239 (3d Cir. 1975).  In the case at bar, the representative parties include prisoners that might be convicted or acquitted (and, thus, soon released).  Consequently, the interests of the these three groups are likely to substantially diverge from one another or even have nothing in

common. Therefore, this Court finds that this prerequisite is also not met by Plaintiffs.[6]

In light of the aforesaid shortcomings and concerns, the Court finds Plaintiffs' proposed class of 7 facially unsuitable for class action and, therefore, denies Plaintiffs' request for certification.

---

[6] There are other considerations cautioning against certification of Plaintiffs' putative class. For instance, the persons already released cannot be representatives of the class of prisoners. See In re Fleetboston Fin. Corp. Secs. Litig., 253 F.R.D. 315 (D.N.J. 2008) (class representative cannot be in qualitatively different circumstances than the rest of the class). Moreover, and of paramount importance here, none of the imprisoned Plaintiffs could act as a "lead plaintiff," since it was long established that "a prisoner proceeding pro se may not seek relief on behalf of his fellow inmates." Alexander v. New Jersey State Parole Board, 160 Fed. App'x 249, 250 n.1 (3d Cir. 2005) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant . . . to represent his fellow inmates in a class action")). The rationale for this prohibition is derivative from the language of Rule 23(a)(4) which requires that the class representative have the capacity to fairly and adequately protect interests of class members, and an inmate, a lay person subject to being transferred to another corrections facility at any time, cannot, by definition, adequately and fairly represent other incarcerated individuals. See Awala v. N.J. Dep't of Corr., 2005 U.S. Dist. LEXIS 18426 (D.N.J. Aug. 23, 2005), appeal dismissed, 227 Fed. App'x 133 (3d Cir. 2007); see also Laird v. Tatum, 408 U.S. 1 (1972); Valley Forge Christian College v. Am. United for Separation of Church & State, 454 U.S. 464, 482 (1982); Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); accord McNeil v. Guthrie, 945 F.2d 1163, 1164 & nn.1-2 (10th Cir. 1991) (a prisoner lacks standing to raise any claims of others regarding the class action); Booker v. Powers, 2007 U.S. Dist. LEXIS 12349, at *5 (E.D. Cal. Feb. 8, 2007) (same); Ray v. Robertson, 05-2904, 2005 U.S. Dist. LEXIS 46472 (S. Car. Dec. 21, 2005) (R. Bryan Harwell, J.)(discussing non-certificability of a prisoners' class ridden with the problems analogous to those present in Plaintiffs' putative class).

**B.    Plaintiffs' Allegations Disfavor Joinder**

In <u>Hagan</u>, 570 F.3d 146, the Court of Appeals addressed

certain considerations applicable to civil cases in which

multiple prisoner-plaintiffs seek to join in one action pursuant

to Rule 20.[7]

Rule 20 of the Federal Rules of Civil Procedure provides the

following regarding permissive joinder of parties:

> (1)  Plaintiffs.  Persons may join in one action as
>      plaintiffs if:
>      (A)  they assert any right to relief jointly,
>           severally, or in the alternative with respect
>           to or arising out of the same transaction,
>           occurrence, or series of transactions or
>           occurrences; and
>      (B)  any question of law or fact common to all
>           plaintiffs will arise in the action.
> (2)  Defendants.  Persons ... may be joined in one
>      action as defendants if:
>      (A)  any right to relief is asserted against them
>           jointly, severally, or in the alternative
>           with respect to or arising out of the same
>           transaction, occurrence, or series of
>           transactions or occurrences; and
>      (B)  any question of law or fact common to all
>           defendants will arise in the action.

Fed. R. Civ. P. 20(a).

The requirements prescribed by Rule 20(a) are to be

liberally construed in the interest of convenience and judicial

economy.  <u>See</u> <u>Swan v. Ray</u>, 293 F.3d 1252, 1253 (11th Cir. 2002).

---

[7]  "In exercising its discretion [whether to permit
joinder], the District Court must provide a reasoned analysis
that comports with the requirements of the Rule, and that is
based on the specific fact pattern presented by the plaintiffs
and claims before the court."  <u>Hagan</u>, 570 F.3d at 157.

However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed. App'x 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997)

Moreover, Rule 21 of the Federal Rules of Civil Procedure provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Similarly, a district court has broad discretion in deciding whether to sever a party or claim pursuant to Rule 21.  Although Rule 21 is most commonly invoked to sever parties improperly joined under Rule 20, "the Rule may also be invoked to prevent prejudice or promote judicial efficiency."  Lopez v. City of Irvington, 2008 WL 565776, *2 (D.N.J. 2008); see also Sporia v. Pennsylvania Greyhound Lines, Inc., 143 F.2d 105 (3d Cir. 1944) (not limiting Rule 21 severance to cases of misjoinder); Wyndham Assoc. v. Bintliff, 398 F.2d 614 (2d Cir.) (same, citing Sporia), cert. denied, 393 U.S. 977 (1968); Rohr v. Metropolitan Ins. & Cas. Co., 2007 WL 163037 (E.D. La. Jan. 17, 2007) (court may also consider whether jury confusion would result from the volume of evidence if the plaintiffs were joined); 4 James Wm. Moore et al., Moore's Federal Practice § 21.02(1) (3d ed. 2007) (courts may issue severance orders under Rule 21, even in the absence of misjoinder

15

and non-joinder of parties, "to construct a case for the

efficient administration of justice").

Specific factors to be considered in determining whether

severance is warranted include: "(1) whether the issues sought to

be tried separately are significantly different from one another,

(2) whether the separable issues require the testimony of

different witnesses and different documentary proof, (3) whether

the party opposing the severance will be prejudiced if it is

granted, and (4) whether the party requesting severance will be

prejudiced if it is not granted." German v. Federal Home Loan

Mortgage Corp., 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995).

In addition, a district court has the inherent power "'to

control the disposition of the causes on its docket with economy

of time and effort for itself, for counsel, and for litigants.'"

United States v. Colomb, 419 F.3d 292, 299 (5th Cir. 2005)

(quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).  "A

court's inherent power to manage its caseload, control its

docket, and regulate the conduct of attorneys before it, provides

authority to fashion tools that aid the court in getting on with

the business of deciding cases."  Eash v. Riggins Trucking, Inc.,

757 F.2d 557, 567 (3d Cir. 1985).

Here, the Complaint is comprised of Picozzi's own claims

which are simply stitched together with the names of other

Plaintiffs.  While, "[u]nder the Rules, the impulse is toward

entertaining the broadest possible scope of action consistent with fairness to the parties," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) (footnote omitted), "[i]n making a joinder decision, the district court is guided by the underlying purpose of joinder, which is to 'promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits.'"  Swan, 293 F.3d at 1253 (quoting Alexander v. Fulton County, Georgia, 207 F.3d 1303, 1323 (11th Cir. 2000)).  "[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay."  Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1652 (3d ed. 2009) (citations omitted); see also Chavez v. Illinois State Police, 251 F.3d 612, 632 (7th Cir. 2001) (a district court's discretion with respect to joinder "allows a trial court to consider, in addition to the requirements of Rule 20, 'other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness'" (citations omitted)).

In this matter, the very fact that the Complaint focuses on Picozzi's claims and is virtually silent as to the claims of other Plaintiffs suggest that a joinder of Picozzi's claims with whatever challenges other Plaintiffs might wish to raise would

not foster the objectives of the Rule; rather, it is likely to
result in undue prejudice, unwarranted expense and/or unnecessary
delay.  Simply put, the claims sketched in the Complaint do not
appear appropriate for joinder, cf. Pope v. Miller, Civil No. 07-
0284, 2007 WL 2427078 (W.D. Okla.  Aug. 21, 2007) (not
appropriate to join access-to-courts claims and Eighth Amendment
medical-care and conditions-of-confinement claims): proceeding
with multiple, separate litigation for each Plaintiff under the
same cause number would be distracting at best -- and costly,
confusing, and grossly inefficient at worst.  See Johnson-Bey v.
Indiana Department of Corrections, Civil No. 09-0249, 2009 WL
1691150 (N.D. Ind. June 16, 2009); Steward v. Mississippi, Civil
No. 07-0184, 2007 WL 4375210 (S.D. Miss. Dec. 12, 2007).

Thus, even if the Court construes the Complaint as an
implied application for joinder of Plaintiffs, such application
must be denied.[8]  In light of the foregoing, the Court will
direct the Clerk to open a new and separate individual matter for
each Plaintiff other than Picozzi and allow these Plaintiffs an
opportunity to submit their individual amended complaints.[9]

---

[8]  In the event Plaintiffs proceed with their individual
actions and file their amended complaints, the Court reserves the
right to revisit the issue of joinder and consider consolidation
of these matters.

[9]  This measure is undertaken so: (a) no Plaintiff would be
obligated to file an amended complaint if that Plaintiff decides
that such submission is not in his best interests (that decision
                                                    (continued...)

18

**III. ADMINISTRATIVE TERMINATION OF PICOZZI'S DUPLICATIVE CLAIMS**

As noted <u>supra</u>, Picozzi's claims asserted in the Complaint at bar are substantively identical, even by his own admission, to the claims he raised in <u>Picozzi v. Connor</u>, Civil Action No. 12-3063 (NLH).  Simply put, Picozzi's challenges here and in <u>Picozzi v. Connor</u>, Civil Action No. 12-3063 (NLH), are facially duplicative and should be dismissed as such.

> The power of a federal court to prevent duplicative litigation is intended "to foster judicial economy and the 'comprehensive disposition of litigation,'" <u>Curtis v. Citibank, N.A.</u>, 226 F.3d 133, 138 (2d Cir. 2000) (quoting <u>Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.</u>, 342 U.S. 180, 183 (1952)), and "to protect parties from 'the vexation of concurrent litigation over the same subject matter.'"  <u>Id.</u> (quoting <u>Adam v. Jacobs</u>, 950 F.2d 89, 93 (2d Cir. 1991)).

<u>Porter v. NationsCredit Consumer Disc. Co.</u>, 2003 Bankr. LEXIS 933, at *33 (Bankr. E.D. Pa. 2003).

The Court, therefore, will direct the Clerk to administratively terminate the instant matter while reserving in

---

[9](...continued)
will incur no penalty, filing fee assessment or a "strike"); and (b) in the event such amended complaint is submitted and duly relates to the allegations stated in the instant Complaint (in accordance with the requirements of Rule 15), the date of filing of such amended complaint will be deemed -- for the purposes of the statute of limitations analysis, if it becomes relevant -- the date of Plaintiffs' submission of the instant Complaint to Plaintiffs' prison officials for mailing to the Court.  The Court, however, stresses that Plaintiffs would be obligated to submit their complete IFP applications together with their amended complaints in the event they elect to submit such amended pleadings.

Picozzi the opportunity to prosecute his original <u>Picozzi v.</u> <u>Connor</u>, Civil Action No. 12-3063, upon submission of a duly executed IFP application or prepayment of his filing fee of $350.

## IV.   CONCLUSION

For the foregoing reasons, joinder of Plaintiffs will be denied as well as Plaintiffs' application for class certification.  The instant matter will be administratively terminated as duplicative of <u>Picozzi v. Connor</u>, Civil Action No. 12-3063(NLH).  The Court will direct the Clerk to open an individual matter for each of the other named Plaintiffs.  Each of those Plaintiffs will be allowed an opportunity to submit his amended complaint stating that Plaintiff's individual claims and detailing the underlying facts.  As with Picozzi, each such Plaintiff will have to either prepay his filing fee or duly apply for IFP status.  The Clerk will be directed to serve each such Plaintiff with a blank IFP form and a blank civil complaint form for their use in asserting their individual claims.

An appropriate Order accompanies this Opinion.


<u>    s/ Noel L. Hillman    </u>
**NOEL L. HILLMAN**
**United States District Judge**

Dated: July 9, 2012
At Camden, New Jersey